# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MARIE WOMACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-03483-CV-S-DGK |
| | ) | |
| DEPUTY PAUL BRADSHAW, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT

This civil rights action arises from injuries sustained by Plaintiff Marie Womack during her arrest for two misdemeanors. Plaintiff alleges that Howell County Sheriff's Deputy Paul Bradshaw used excessive force in wrestling her to the ground following her initial detention. After the incident, Plaintiff filed a three-count lawsuit in this Court against Defendants Paul Bradshaw ("Sergeant Bradshaw") and Howell County, Missouri ("Howell County") (collectively "Defendants"). The complaint alleges an excessive force claim against Sergeant Bradshaw under 42 U.S.C. § 1983 (Count I), a municipal liability claim against Howell County under 42 U.S.C. § 1983 (Count II), and a claim for attorneys' fees under 42 U.S.C. § 1988(b) (Count III).

Now before the Court is Defendants' motion for summary judgment (Doc. 55). Finding no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law, the Court GRANTS Defendants' motion.

## Undisputed Factual and Procedural Background[1]

In the early morning hours of April 26, 2012, Howell County Sheriff's Deputy Derek Hughston ("Deputy Hughston") responded to a call that four individuals in a vehicle were engaged in suspicious activity. As Deputy Hughston approached the scene, he noticed a vehicle leaving a driveway. Deputy Hughston followed the vehicle, and eventually stopped it after it veered into the other lane of traffic. The vehicle contained two occupants: Plaintiff in the driver's seat and William D. Burnside in the passenger's seat. While speaking with Plaintiff, Deputy Hughston observed that she had bloodshot, glassy, and watery eyes, displayed slurred speech, and smelled of alcohol.

Deputy Hughston instructed Plaintiff to exit the vehicle and requested she take a breathalyzer test. She eventually submitted to the test, and it gauged her blood alcohol content at .26, over three times the legal limit. This test, combined with his previous observations, led Deputy Hughston to arrest Plaintiff for driving while intoxicated. Deputy Hughston handcuffed Plaintiff's arms in front of her body and placed her in the back of his unlocked car. After securing her, he waited at the scene for a tow truck to arrive.

Sergeant Bradhsaw, the only other Howell County officer on duty, overheard that Deputy Hughston had stopped two individuals in the vehicle, so he decided to assist him. When Sergeant Bradshaw arrived at the scene, he parked his car behind Deputy Hughston's. Sergeant Bradshaw's car, unlike Deputy Hughston's, had a functioning dashboard camera, which videotaped the events. Since Sergeant Bradshaw did not activate his lights, the microphones in

---

[1] The Court has omitted properly controverted facts, asserted facts that are immaterial to the resolution of the pending motion, asserted facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. Furthermore, because this case includes audio and video recording of the events in question, the Court excluded Plaintiff's version of the facts to the extent that it conflicted with the unchallenged audio and video recording. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that when a dashboard camera depiction of events contradicts a § 1983 plaintiff's version of the facts, the court should credit the video over the plaintiff's recitation on the disputed issues).

his car and on his person were not on during the relevant events. Deputy Hughston, however, had a functioning microphone both on his person and in his squad car.

Sergeant Bradshaw's dashboard camera and Deputy Hughston's squad car microphone captured the majority of the following events. After arriving on the scene, Sergeant Bradshaw talked with Deputy Hughston at the front of Deputy Hughston's car. Deputy Hughston's personal microphone did not record this conversation because he deactived it to ensure that their discussion did not override the recording of any statements made by Plaintiff while in the squad car. The microphone in the squad car, however, recorded several statements from Plaintiff. She remarked that she wanted out of the vehicle to smoke a cigarette and that she could exit the vehicle if she really wanted to do so. Plaintiff then knocked on the window to get the officers' attention.

Sergeant Bradshaw looked around inquisitively before realizing that the noise was coming from the back of Deputy Hughston's squad car. He then approached the rear passenger-side door, which Plaintiff unlocked.[2] Sergeant Bradshaw opened the door about one-half to three-quarters of its capacity. He then rested his right arm on the top and side of the door and slightly leaned his body into the car. Sergeant Bradshaw maintained this pose for approximately forty-five seconds as he talked with Plaintiff.

Upon opening the door, Sergeant Bradshaw asked, "Yes, ma'am?" Plaintiff requested to exit the vehicle in order to smoke a cigarette. Sergeant Bradshaw said, "No." She then inquired why she could not have a cigarette while waiting for the tow truck to arrive. Sergeant Bradshaw responded that she could not exit the vehicle because she was under arrest and that she could not have a cigarette in her mouth because they suspected her of driving while intoxicated. Plaintiff

---

[2] Apparently, Plaintiff was able to unlock the interior locks, but the child locks prevented her from actually opening the door.

3

retorted that she had gum in her mouth. Sergeant Bradshaw quickly requested that she spit out the gum. She refused. Bradshaw again ordered her to expel the gum, and again she refused. Sergeant Bradshaw then alerted Deputy Hughston that Plaintiff had gum in her mouth. Plaintiff then yelled that she had it the entire time.

As Deputy Hughston approached the rear passenger-side door, Plaintiff ducked under Sergeant Bradshaw's arm and exited the vehicle. Sergeant Bradshaw then grasped her left arm as she faced the approaching Deputy Hughston. Both Sergeant Bradshaw's and Plaintiff's backs were turned away from the dashboard camera as they stood a few feet to the right of the open car door. Plaintiff then stated that she wanted a cigarette, and Sergeant Bradshaw responded by telling her to return to the vehicle. As Sergeant Bradshaw pulled her towards the back door, she said, "No." Plaintiff then pulled back from Sergeant Bradshaw as he held her left arm. Once she pulled away, she quickly kicked the door shut, and in her follow-through, she struck Sergeant Bradshaw's right shin with her foot.

While still grasping her left arm, Sergeant Bradshaw quickly turned to his left, taking Plaintiff to the ground. In the process, Plaintiff's face struck the road. Once on the ground, Sergeant Bradshaw continued to hold Plaintiff's left arm and placed his right arm on her shoulder to prevent her from moving.[3] Eventually, Plaintiff rolled over onto her back, causing Sergeant Bradshaw to almost fall on top of her. Upon regaining his balance, Sergeant Bradshaw lifted Plaintiff up by her arms and moved her back towards the car.

---

[3] Plaintiff disingenuously disputes this fact. According to Plaintiff, the video clearly shows that Sergeant Bradshaw pushed her face into the road surface. This is incorrect. Although the video shows Sergeant Bradshaw grasping her left arm, the hood and fender of his squad car obstruct the view of her face. Thus, it is unclear from the video precisely where Sergeant Bradshaw placed his right arm. In his affidavit and deposition, Sergeant Bradshaw stated that he placed pressure on her shoulder, not her head. Plaintiff does not provide any rebuttal evidence aside from her misinterpretation of the video. Accordingly, the Court treats Sergeant Bradshaw's account as undisputed.

4

As Sergeant Bradshaw lifted Plaintiff to her feet, Deputy Hughston opened the rear passenger-side door. Sergeant Bradshaw then pushed her towards the open door and told her to get in the car. She once again yelled, "No," and tried to pull away from him. With the assistance of Deputy Hughston, Sergeant Bradshaw finally pushed Plaintiff into the back seat.

Once in the car, Plaintiff continued to resist by placing her feet against the doorjamb. Sergeant Bradshaw then told her that he never said to get out of the car, that she needed to sit down, and that she should quit resisting. The officers eventually secured her and shut the door.

After Deputy Hughston entered the car, Plaintiff told him that Sergeant Bradshaw's actions broke her jaw. Deputy Hughston eventually transported her to the Howell County Sheriff's Office. Once there, Deputy Hughston contacted paramedics to evaluate her injuries and take a blood sample. Plaintiff consented to the blood sample, and later tests revealed that she had a blood alcohol content of .24. Medical personnel also diagnosed Plaintiff with a fractured jaw.

As a result of the incident, Deputy Hughston cited Plaintiff for driving while intoxicated and Sergeant Bradshaw cited her for resisting arrest and assault on a law enforcement officer. On November 26, 2012, Plaintiff pled guilty to driving while intoxicated and resisting arrest, both misdemeanors.

At the time of the incident, Howell County had the following use of force policy: "It shall be the policy of the Howell County Sheriff's Office to utilize the level of force which was reasonable to control a person who is uncooperative, resistant or combative. Such force shall be used to protect and prevent injury to the subject, other persons, the deputy, or the property." With respect to training, including use of force, each police officer was responsible for his own continuing education and maintaining his or her Missouri Peace Officer Standards and Training

("POST") certification. Howell County did not provide any use of force training. At the time of the incident, Sergeant Bradshaw in particular received the following training: (1) a 600-hour Basic Law Enforcement Training in 2003 as part of his police academy education, which included forty hours on use of force; (2) an eight-hour refresher course in 2006 on use of force; and (3) 100 hours of training since 2011 in order to maintain his POST certification.

Following the incident, Sergeant Bradshaw completed a use of force form. The form discussed the incident, but did not mention that Plaintiff was handcuffed when he pulled her to the ground. Captain Jared Peterman ("Captain Peterman") reviewed the use of force form, but he did not complete a separate review form. Rather, he discussed the incident with Sergeant Bradshaw, informed Sheriff Michael Shannon of the incident, and filed Sergeant Bradshaw's report. At the time of incident, Howell County did not initiate an investigation into an officer's use of force unless an individual complained or Captain Peterman, after reviewing an officer's report, determined that an officer may have used an unreasonable amount of force. Howell County did not institute an investigation into Sergeant Bradshaw's use of force.

## Standard of Review

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, but "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031,

1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Once the moving party has satisfied his or her initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial, *Anderson*, 477 U.S. at 248, but the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). In this same vein, where, as here, the nonmoving party's recitation of the facts conflicts with a video recording of the events, the court should credit the objective video over the nonmoving party's subjective version of the incident. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**Discussion**

Sergeant Bradshaw and Howell County contend that they are entitled to summary judgment. Sergeant Bradshaw argues that: (1) he entitled to qualified immunity because his takedown of Plaintiff did not violate her constitutional rights;[4] and (2) the United States Supreme Court case of *Heck v. Humphrey*, 512 U.S. 477 (1994) precludes Plaintiff's excessive force claim. Howell County contends: (1) that because Sergeant Bradshaw's takedown did not infringe on Plaintiff's constitutional rights, it cannot be held liable for failure to train; and (2)

---

[4] Sergeant Bradshaw actually makes a third argument, but it is essentially the same as his qualified immunity argument.

7

even assuming that Sergeant Bradshaw violated Plaintiff's constitutional rights, Plaintiff has failed to introduce evidence that Howell County had a policy or custom that caused her constitutional injury. The Court addresses each argument in turn.

**I. Sergeant Bradshaw is entitled to qualified immunity on Plaintiff's excessive force claim.**

Qualified immunity protects police officers from civil liability for actions taken in the line of duty that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Blazek v. City of Iowa City*, —F.3d—, 2014 WL 3824361, at *2 (8th Cir. Aug. 5, 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Stanton v. Sims*, —U.S. —, —, 134 S. Ct. 3, 5 (2013)). An officer is "entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to [the plaintiff], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable official would have known that his actions were unlawful." *Id.* The Court analyzes each prong below.

**A. Sergeant Bradshaw's use of a takedown to subdue Plaintiff as she actively resisted arrest was objectively reasonable under the Fourth Amendment.**

Plaintiff contends that Sergeant Bradshaw violated her Fourth Amendment rights by using excessive force during her arrest. Such a claim requires the Court to analyze "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." *Molina-Gomes v. Welinski*, 676 F.3d 1149, 1152 (8th Cir. 2012) (quoting *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005)). Ascertaining the reasonableness of the force used requires the Court to balance "the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). In conducting this inquiry, the Court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] [was] actively resisting arrest or attempting to evade arrest by flight." *Id*. The Court may also consider the severity of the arrestee's injuries to the extent that it demonstrates the amount of force used. *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).

In weighing these factors, the Court must be mindful that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. As such, the Court "must judge the reasonableness of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight'…." *McKenney v. Harrison*, 635 F.3d 354, 360 (8th Cir. 2011) (quoting *Id.* at 396).

With these principles and factors in mind, the Court concludes that Sergeant Bradshaw's use of force was objectively reasonable. First, and contrary to Plaintiff's mischaracterization as "momentary refusal," Plaintiff actively resisted arrest. The combination of the video and audio paint a vivid picture of a rapidly evolving situation in which Plaintiff's verbal belligerence and passive disobedience escalated to active, and somewhat violent, resistance. It is clear from her statements and actions in the car that Plaintiff intended to exit the vehicle to procure a cigarette. Once Sergeant Bradshaw refused her requests and ordered her to expel the gum, Plaintiff disobeyed his commands and began yelling. Then, without authorization, Plaintiff exited the vehicle. Sergeant Bradshaw grabbed her left arm and attempted to place her back in the car. She

yelled, "No" and rapidly pulled away from him and the car. Then, she kicked the door shut, striking Sergeant Bradshaw in the process. This was active resistance. At this time, Sergeant Bradshaw took her to the ground and once on the ground applied pressure to her shoulder and arm. Even this amount of force did not deter Plaintiff as she continued to pull away from him on the ground and again after she regained her footing. Given Plaintiff's active and rapidly escalating resistance, Sergeant Bradshaw was entitled to use a lawful takedown maneuver, such as this one, to control the subject. *Cf. Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995) (noting that an officer can use reasonable force to take a suspect to the ground in order to effect arrest).

The remaining factors—the severity of the crime and the threat posed by the arrestee—do not alter this conclusion. Plaintiff eventually pled guilty to two misdemeanors: driving while intoxicated and resisting arrest. Typically, an officer must use a lesser amount of force in effecting arrests for *nonviolent* misdemeanors. *See Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) ("Force is least justified against *nonviolent misdemeanants* who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.") (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)) (emphasis added). Deputy Hughston initially arrested Plaintiff for driving while intoxicated. If this were the only reason to arrest Plaintiff when Sergeant Bradshaw executed the takedown, then the severity of the crime factor might favor Plaintiff. This nonviolent misdemeanor, however, was coupled with Plaintiff's violent misdemeanor for resisting arrest. Plaintiff employed physical force, including striking Sergeant Bradshaw with her foot, in resisting being placed back into the car. And although there is no indication that Plaintiff posed an immediate threat to the officers, her somewhat violent resistance supports the level of force used to prevent further escalation.

To support her argument, Plaintiff cites *Meirthew v. Amore*, 417 F. App'x 494 (6th Cir. 2011). In *Meirthew*, the Sixth Circuit ultimately held that a police officer's use of a takedown maneuver against a handcuffed arrestee constituted an unreasonable amount of force. *Id.* at 498. Plaintiff contends that *Meirthew* is sufficiently analogous that the Court should reach a similar conclusion concerning Sergeant Bradshaw's conduct. The Court disagrees.

Although *Meirthew* bears some facial similarity to the present case, it is materially distinguishable. In *Meirthew*, the plaintiff was in handcuffs, unarmed, posed little if any threat to the police officers, and suffered significant facial injuries from the maneuver. 417 F. App'x. at 496. This, however, is where the similarities end, because the plaintiff in *Meirthew* was also "*surrounded by police officers, physically restrained, and located in the secure confines of a police station*," when the incident occurred. 417 F. App'x. at 497 (emphasis added).

The scenario confronting Sergeant Bradshaw was very different. Sergeant Bradshaw was not located in the "secure confines of a police station," *Meirthew*, 417 F. App'x. at 497, but rather on the side of the road in the middle of the night in close proximity to Plaintiff's unsecured vehicle. Over the course of approximately one minute, Plaintiff's verbal protests transformed into aggressive physical resistance, which starkly contrasts with the passive resistance by Meirthew. These circumstances place this case, unlike *Meirthew*, into the category of "tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. Moreover, unlike *Meirthew*, Plaintiff used physical force against Sergeant Bradshaw to resist arrest. These factual distinctions make *Meirthew* inapposite and Sergeant Bradshaw's use of force reasonable under the circumstances.

Of course, with the benefit of hindsight and the video and audio recordings, the Court can now speculate as to how Sergeant Bradshaw could have handled the situation differently. This,

11

however, is not the standard under which the Court conducts the reasonableness inquiry. Rather, the Court must make an allowance for the inevitable split-second decisions an officer must make in effecting an arrest. *McKenney*, 635 F.3d at 360. Given this standard and the circumstances confronting Sergeant Bradshaw, the Court cannot say his responsive takedown maneuver to prevent further resistance was unreasonable even though Plaintiff sustained a fractured jaw. *See Blazek*, —F.3d—, 2014 WL 3824361, at *4 ("[I]t is unrealistic to expect a police officer, in the heat of the moment, to discern whether a particular ankle injury would result from a takedown or to plan a careful landing for the detainee's shoulder."); *McKenney*, 635 F.3d at 360 ("Despite the fatal consequences of the incident, the level of force employed also was not unreasonable."); *McVay ex rel. Estate of McVay v. Sisters of Mercy Health Sys.*, 399 F.3d 904, 909 (8th Cir. 2005) ("The result in this case, McVay's tragic death, cannot transform the actions Sears took under the circumstances into an actionable claim under section 1983.").

> **B. Assuming for the sake of argument that Sergeant Bradshaw used unreasonable force in employing the takedown maneuver, the unreasonableness of this application was not clearly established at the time of the incident.**

Even if Sergeant Bradshaw's takedown maneuver constituted excessive force, the Court finds that his conduct did not violate any clearly established constitutional right. The second prong of the qualified immunity analysis requires the Court to inquire whether the "right that was violated was 'clearly established' at the time of the defendant's alleged misconduct." *Chambers*, 641 F.3d at 908. A prior decision need not hold the precise misconduct at issue unconstitutional for a right to be clearly established. *De Boise v. Taser Intern., Inc.*, —F.3d—, 2014 WL 3704042, at *4 (8th Cir. July 28, 2014) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Nevertheless, Plaintiff must demonstrate that "'every reasonable official would have understood that what he is doing violates' a constitutional right…and that the constitutional question was

'beyond debate.'" *Blazek*, —F.3d—, 2014 WL 3824361, at *4 (quoting *Ashcroft v. al-Kidd¸*— U.S. —, —, 131 S.Ct. 2074, 2083 (2011)).

In conducting this inquiry, the Court "must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Blazek*, —F.3d—, 2014 WL 3824361, at *4 (quoting *Plumhoff v. Rickard*, — U.S. —, —, 134 S.Ct. 2012, 2023 (2014)). Here, the proper inquiry is whether federal decisional law as of April 26, 2012, clearly established that it was unconstitutional for an arresting officer to use a takedown maneuver against an arrestee who was resisting despite being placed in handcuffs. The Court finds that it was not.

A recent and somewhat analogous Eighth Circuit case sheds light upon this issue. In *Blazek v. City of Iowa City*, the court discussed the state of clearly established federal law concerning the amount of force an officer may employ against a handcuffed arrestee. 2014 WL 3824361, at *5. In affirming a district court's denial of qualified immunity, the court held, "It was clearly established in 2009 that when a person is *subdued and restrained* with handcuffs, a '*gratuitous and completely unnecessary* act of violence' is unreasonable and violates the Fourth Amendment." *Id.* (quoting *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006)) (emphasis added).[5] From this, it is apparent that at the time of the incident Sergeant Bradshaw's conduct *would have been* clearly unconstitutional if he performed his takedown as an unnecessary act of violence against a subdued and handcuffed suspect. This, however, was not the case. The

---

[5] A survey of decisional law from other circuits reveals a similar clearly established constitutional right. *See Meirthew*, 417 F. App'x. at 497-98 (denying summary judgment on excessive force claim when officer threw a handcuffed and compliant arrestee to the ground); *Smoak v. Hall*, 460 F.3d 768, 783-784 (6th Cir. 2006) (denying summary judgment on excessive force claim when officer threw a handcuffed arrestee to the ground even though he was initially compliant and only jumped up from his feet when the officers shot his dog); *Young v. Prince George's Cnty., Md.*, 355 F.3d 751, 757-58 (4th Cir. 2004) (denying summary judgment on excessive force claim when officer placed handcuffed and compliant arrestee in headlock, threw him to the ground, and kneed him in the back).

undisputed facts clearly demonstrate that Plaintiff was not subdued and restrained at the time of the takedown, because despite the handcuffs, she succeeded in pulling away from the officer, kicking the door shut, and striking him. The record demonstrates that rather than employing the takedown as a gratuitous act against an incapacitated suspect, *Henderson*, 439 F.3d at 503, Sergeant Bradshaw used the maneuver to prevent further escalation. And Plaintiff fails to direct the court to any authority suggesting it was unreasonable to use a takedown maneuver against a handcuffed *yet resisting* arrestee.[6] Without making this showing, the Court cannot conclude that Sergeant Bradshaw's use of force violated a "clearly established" constitutional right.

For these reasons, Sergeant Bradshaw is entitled to summary judgment. Because the Court finds that Sergeant Bradshaw prevails on his qualified immunity argument, it declines to address his argument that *Heck v. Humphrey* affords him protection from Plaintiff's excessive force claim.

**II. Howell County is also entitled to summary judgment.**

Under Count II, Plaintiff raises two slightly different theories of municipal liability under 42 U.S.C. § 1983. Plaintiff first contends that Howell County was deliberately indifferent to an obvious need for use of force training. Plaintiff also argues that Howell County condoned its officer's use of excessive force by employing a custom or policy of not reviewing use of force reports. Neither theory is persuasive.

To impose municipal liability under a failure to train theory, a plaintiff must put forth evidence that: "(1) the [county's]…training practices [were] inadequate; (2) the [county] was

---

[6] In fact, Plaintiff only cites to one case in refuting the second prong of qualified immunity: *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007). *Griffith*, however, stands for the proposition that, "Cases in [the Sixth Circuit] establish the right of people who pose no safety risk to the police to be free from gratuitous violence during the arrest." 473 F.3d at 659. As discussed above, even if Sergeant Bradshaw's actions were unreasonable, they do not amount to gratuitous violence because he undertook the takedown to subdue Plaintiff, who resisted until the very moment Sergeant Bradshaw closed the squad car door. Thus, *Griffith* did not place Sergeant Bradshaw on notice that his conduct was clearly unconstitutional.

deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by [the county]; and (3) an alleged deficiency in the…training procedures actually caused the plaintiff's injury." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)) (alterations in original).

Plaintiff fails to satisfy this standard for three reasons. First, failure to train liability cannot exist where the officer's conduct did not result in a constitutional violation. *Royster v. Nichols*, 698 F.3d 681, 692 (8th Cir. 2012). As discussed above, *see supra* I.A., Sergeant Bradshaw used reasonable force in arresting Plaintiff. Since no underlying constitutional violation exists, Plaintiff's failure to train theory is unstainable. *Id.* Second, even assuming Sergeant Bradshaw employed excessive force, Plaintiff's claim still fails because she has not demonstrated that Howell County's training was deficient. Without citing any authority, Plaintiff asserts that Howell County's lack of direct training necessarily means that its training was deficient. In making this argument, however, Plaintiff ignores the fact that notwithstanding the lack of direct training, Sergeant Bradshaw individually underwent 708 hours of training, including 48 hours on the use of force. These undisputed facts refute Plaintiff's bare assertion that the training is deficient. *See Smith v. Watkins*, 159 F.3d 1137, 1139 (8th Cir. 1998) (training not deficient when officer attended eight-weeks of police academy, completed a second training academy, and an extra 100 hours of training subsequent to the police academies); *Andrews*, 98 F.3d at 1076-77 (training not deficient when officer underwent two-weeks of on the job training and training during police academy). Finally, Plaintiff cites no evidence suggesting her alleged constitutional injury arose from Howell County's failure to provide use of force training. *Smith*, 159 F.3d at 1139 ("As the Supreme stated in *Canton*, one officer's shortcomings

do not suffice to attach liability to a municipality, because they could just as easily result from factors other than a faulty training program."). For all these reasons, Plaintiff's failure to train claim fails as a matter of law.

Plaintiff's alternative theory for municipal liability fares no better. Plaintiff contends that Howell County employed a custom of not reviewing an officer's completed use of force reports, thereby condoning an officer's conduct in situations where he used excessive force. A municipality may be held liable for failing to investigate claims of excessive force if a plaintiff demonstrates that (1) the municipality employed a custom or policy of ignoring such claims, and (2) said custom or policy was the "moving force [behind] the constitutional violation." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (alterations in original). But this theory cannot apply here because Plaintiff fails to cite any evidence that Howell County employed a custom or policy of failing to review the use of force reports. The Court cannot conclude that a policy existed because Plaintiff has not demonstrated that the alleged failure to review the use of force reports resulted from "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* Furthermore, Plaintiff failed to identify any evidence suggesting a custom existed. To constitute a custom the alleged unconstitutional conduct must be "continuing, widespread, and persistent," *Id.*, but Plaintiff fails to adduce any evidence of *other* allegedly uninvestigated incidents of excessive force by officers. And even assuming that Sergeant Bradshaw employed excessive force and Howell County failed to investigate after Captain Peterman reviewed the use of force report, this one incident, without more, is insufficient to suggest a municipal custom. *Id.* ("A single incident normally does not suffice to prove the existence of a municipal custom.").

Because Plaintiff failed to show how Howell County could be liable under the facts in this case, Howell County is entitled to summary judgment on Count II.

## Conclusion

Because Sergeant Bradshaw and Howell County are entitled to judgment as a matter of law, the Court GRANTS Defendants' motion (Doc. 55).

**IT IS SO ORDERED.**

Date: September 10, 2014	/s/ Greg Kays
	GREG KAYS, CHIEF JUDGE
	UNITED STATES DISTRICT COURT